UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-408-GWU

DONNA CAROL DEATON,                                                      PLAINTIFF,


VS.                                   **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                             DEFENDANT.


**INTRODUCTION**

Donna Deaton brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Deaton, a 47-year-old former food preparer and teacher's aide with a high school equivalent education, suffered from impairments related to diabetes mellitus, sleep apnea/obesity, chronic obstructive pulmonary disease/asthma, and a congenital heart block.  (Tr. 13, 19). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of sedentary level work.  (Tr. 17, 19).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 20).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Id.).

The hypothetical question presented to Vocational Expert Jackie Rogers included an exertional limitation to sedentary level work, restricted from a full range by such non-exertional restrictions as a need to avoid exposure to pulmonary irritants such as dust, fumes, gases or chemicals and a need to avoid exposure to humidity and temperature extremes.  (Tr. 801).  In response, Rogers identified a significant number of jobs in the national economy which could still be performed.

(Tr. 802).  Therefore, assuming that the vocational factors considered by the expert fairly characterized Deaton's condition, than a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Dr. Rita Ratliff examined Deaton and noted problems with sleep apnea, hypertension, back pain, and morbid obesity. (Tr. 231).  Despite these impairments, Dr. Ratliff found no work-related restriction with regard to stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling.  (Id.).  The ALJ's findings were compatible with this opinion.

Dr. John Jones evaluated Deaton's vision in August, 2007.  Eyeglasses were prescribed for a mild refractive error and normal, age-related presbyopia.  (Tr. 346). Dr. Jones found no vision problem which would interfere with the claimant's performance of such work activities as sitting, standing, moving about, carrying, handling objects, hearing, speaking or traveling.  (Id.).  This report does not support the plaintiff's claim of total disability.

Dr. Carlos Hernandez (Tr. 336-344) and Dr. James Ramsey (Tr. 610-617) each reviewed the record and opined that Deaton would be able to perform medium level work, restricted from a full range by an inability to ever climb ladders, ropes or scaffolds, an inability to more than occasionally stoop and climb ramps and stairs and a need to avoid concentrated exposure to humidity, fumes, gases, odors, dusts, gases and poor ventilation.  The ALJ's findings were essentially consistent with

09-408  Donna Carol Deaton

these opinions. While the hypothetical question did not include any postural restrictions, Social Security Ruling 96-9p, concerning sedentary level work, suggests that these restrictions would not be disabling. Therefore, these opinions also support the administrative decision.

Deaton was treated at the Aaron Jonan Memorial Clinic for a number of years between 1989 and 2007. (Tr. 349-609, 618-775). The only restrictions placed on the plaintiff's activities by the Clinic's staff was a need to avoid alcohol, drugs and tobacco abuse. (Tr. 468). Such treating and examining sources as the staff at the Appalachian Heart Center (Tr. 219-227), the staff at Norton Hospital (Tr. 237-267), the staff at the Kentucky River Medical Center (Tr. 295-301), and the staff at the Family Medical Speciality Clinic (Tr. 302-317) did not report the existence of more severe physical restrictions than those found by the ALJ. Therefore, these opinions provide additional support for the administrative denial decision.

The ALJ found that Deaton did not suffer from a "severe" mental impairment. (Tr. 14). Psychologists Ed Ross (Tr. 277-278) and Edward Stodola (Tr. 319-320) reviewed the record and identified a number of "moderate" mental limitations which were not presented to the vocational expert. These limitations were not contradicted in the record by those of another treating or examining mental health professional. The plaintiff has not raised this omission as an issue and has even asserted that this arguably favorable evidence should not be accorded any

probative weight because these are the opinions of non-examining sources. Therefore, under these circumstances, the court finds no reversible error.

Deaton argues that the ALJ did not properly assess her credibility.  The ALJ reported a number of reasons for his finding that her claims of disabling symptoms were not fully credible.  The ALJ noted that the objective medical record did not reveal a totally disabling condition.  (Tr. 19).  No treating, examining or reviewing physician of record indicated that she was totally disabled.  (Id.).  As previously noted, Dr. Ratliff and Dr. Jones did not find any physical restrictions and the limitations indicated by the medical reviewers would not preclude performance of a limited range of sedentary level work.  Another factor for the ALJ was the lack of objective medical testing supporting her claims.  (Id.).  An echocardiogram at the Kentucky River Medical Center revealed normal left ventricular size and function.  (Tr. 297).  A Doppler venous ultrasound revealed no sign of deep venous thrombosis involving the lower extremities.  (Tr. 296).  Nuclear cardiology imaging at the Family Medical Speciality Clinic was normal.  (Tr. 303).  A cardiac stress test at the Aaron Jonan Memorial Clinic showed no reversible ischemia.  (Tr. 757).  Dr. Ratliff noted no nerve root compression or motor deficit upon physical examination.  (Tr. 230).  Despite her health problems, the plaintiff assisted in the care of her four grandchildren who lived with her.  (Tr. 18, 779, 789).  One of the grandchildren was disabled with cerebral palsy.  (Tr. 782-783).  She assisted the children with their

homework.  (Tr. 790).  She shopped occasionally at the Dollar Store and reported no problems with driving.  (Tr. 18, 790-791).  Therefore, the court finds that the ALJ did not err in evaluating the claimant's credibility.

Deaton also asserts that the ALJ erred by not fairly considering the implications of Social Security Ruling 02-1p concerning evaluation of obesity.  The court notes that the ALJ clearly took obesity into consideration and even found that it was a "severe" impairment. (Tr. 13, 15-16).  The ALJ discussed the problems that the Social Security Ruling indicates that obesity can cause but did not find that this was the case in the current action.  (Tr. 16).  Obesity was considered at every level by the ALJ as required by the Listing.  The plaintiff has not cited any restrictions relating to obesity which were not included in the hypothetical question.  The Sixth Circuit Court of Appeals has indicated that Social Security Ruling 02-1p does not mandate a particular mode of analysis but states that in combination with other impairments, obesity may increase the severity of other restrictions.  Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411-412 (6th Cir. 2006).  The Sixth Circuit further noted that "it is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." Bledsoe, Id. at 412.  Therefore, the court must reject Deaton's claim.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 22nd day of September, 2010.

Signed By:

*G. Wix Unthank*

United States Senior Judge